ward, and a music teacher for instructing the ward. These items were not taken into account in the surrogate's court, nor was the general guardian allowed any commissions; but he was allowed the interest on the $1,000, to the date of his death, towards the support of the ward.

As before stated, the ward was the grandchild of the guardian, and lived in his family from the time she was about five years of age, and seems to have been brought up and cared for as a daughter. The fact that the grandfather gave her an organ and a piano, and paid her tuition for instruction in music, and a physician's bill, is altogether insufficient to authorize a finding that the accounting in the surrogate's court was collusive or fraudulent. He had the right to make such small gifts, it not appearing that he was insolvent when made; and that he intended them as such is shown by his annual accounts, in which those items were not charged. The guardian, having been guilty of devastavit, was not entitled to commissions on the funds in his hands.

Defendant's exceptions should be overruled, their motion for a new trial denied, and a judgment ordered on the verdict in favor of the plaintiff, with costs. All concur.

---

(28 App. Div. 433.)

McCLURE v. CENTRAL TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. April 7, 1898.)

1. CORPORATIONS — SUBSCRIPTIONS TO STOCK — FRAUD — LIABILITY OF SELLING AGENT.
   A receipt for a payment on a stock subscription, reciting that the application for stock was made in accordance with the terms of a certain prospectus, incorporates into the receipt only the portion of the prospectus relating to the terms and mode of payment of the subscription. Hence the corporation's selling agent, who issued the receipt, was not liable for fraudulent misrepresentations in the prospectus.

2. SAME—IMPLIED WARRANTY AGAINST INCUMBRANCES.
   A trust company, selling stock as agent, issued to a purchaser a receipt which stated that application was made for stock in accordance with the terms of a prospectus, and that on payment of the last installment the purchaser was to receive its certificate representing the shares of the common stock, of the par value of £10 per share. The certificate made no allusion to the prospectus, and the company made no statement as to the value or character of the stock, nor the earnings or prospects of the corporation. Held, that there was no implied warranty, from the trust company undertaking to furnish the shares, that they would be free from liens.

3. SAME—TRANSFER AGENT—WHAT CONSTITUTES.
   A trust company, acting as agent in selling stock, issuing a certificate which states that the shares of the stock have been deposited with it, which, with the deed of transfer, will be delivered to the purchaser on surrender of his certificate, which is transferable at its office, was the transfer agent of the certificates issued by it, and not of the corporation whose stock it sold.

4. SAME—POPULAR AND TECHNICAL MEANINGS.
   The words "transfer agent," in a prospectus issued by a corporation to the public, must have their ordinary and popular meaning, and not the peculiar and technical meaning of the stock exchange.

5. SAME—SUBSCRIPTIONS TO STOCK—CAVEAT EMPTOR.

    Where a purchaser of stock from a trust company acting as a selling agent makes no inquiry as to the kind of shares he subscribes for, he cannot hold the company for loss occasioned by the stock's being incumbered.

6. SAME—LIABILITY OF SELLING AGENT.

    The obligations of a trust company selling stock as agent close with the delivery of the certificates, and it is not responsible for the acts of the corporation after that time.

7. SAME—FRAUD—EVIDENCE—RELEVANCY.

    The acts of a corporation after a sale of stock by a trust company as agent are not evidence of fraud against the company.

8. SAME—CONSTRUCTION OF SUBSCRIPTION CONTRACT.

    One purchasing stock through a trust company, and taking a certificate that the shares are on deposit in trust, which, together with a deed of transfer thereof, are to be delivered on demand, cannot insist that he was entitled to original shares.

9. SAME—DUTIES OF SELLING AGENT.

    A trust company, issuing certificates stating that there has been deposited with it, in trust, for sale, certain corporation stock, together with a deed of transfer thereof, is not obliged thereby to become the registered holder of the stock.

Appeal from judgment on report of referee.

Action by William McClure against the Central Trust Company of New York, with H. H. Warner impleaded, to recover money paid under alleged fraudulent representations of said company, for the purchase of stock in a certain corporation. From a judgment in favor of defendant company, plaintiff appealed. Affirmed.

The following is the opinion of the referee (NASH, Referee):

On the 21st day of May, 1891, the plaintiff paid to the defendant company the amount called for by his subscription, and received from the company a paper in the following form:

"Received," etc., "on his application for shares of the ordinary (or common) stock of H. H. Warner & Co., Limited (a corporation). Said application is made in accordance with the terms of the prospectus of April 28th, 1891, and the amount to become due thereupon is to be paid in three installments, to wit: Thirty per cent. on allotment; thirty per cent. May 20th, 1891; and thirty per cent. June 1st, 1891. If the whole amount applied for be not allotted, the surplus amount paid on application will be applied upon the sums to become due on the allotment. If no allotment be made upon said application, the ten per cent. above mentioned will be returned. Payment of each installment will be indorsed hereon upon presentation of this receipt. Upon payment of the last installment, which completes the subscription price of seventy-five dollars per share, and the surrender of this receipt, the said ——— shall receive a certificate of the Central Trust Co. of New York, representing the number of shares of the ordinary (or common) stock of H. H. Warner & Co., Limited, allotted and paid for under the said application, of the par value of ten pounds sterling per share, as soon as the same is ready for delivery.                    Central Trust Co. of New York."

The reference here made to the prospectus incorporates in the receipt only the portions of the prospectus which relate to the terms of the subscription and the mode of payment; but the receipt states also that, on full payment being made, the applicant "shall receive a certificate of the Central Trust Co. of New York, representing the number of shares of the ordinary (or common) stock of H. H. Warner & Co., Limited, allotted and paid for under the said application, of the par value of ten pounds sterling per share," etc. The prospectus contains a great many statements, not alluded to in this receipt, as to the nature of the business, the property conveyed, and the earnings of the company in England. None of these statements have any direct bearing upon the questions in controversy. On the 2d day of June, 1891, the plaintiff

received the following trustee's receipt for fifty shares, and on the 23d of June a similar receipt for fifty more shares, in the H. H. Warner & Co., Limited:

"The Central Trust Company of New York hereby certifies that there has been deposited with it, in trust, fifty shares, as above stated. Said shares, together with a deed of transfer thereof, will be delivered to William McClure, or assigns, on surrender of this trust receipt, properly indorsed. This receipt is transferable at the office of said trust company in New York, either in person or by power of attorney; and, until surrendered, all dividends collected upon said shares by said trust company will be paid to the registered holder of this receipt, or to his order.

"New York, June 2nd, 1891.

"Central Trust Company of New York, Trustee,

"By E. F. Hyde, 2nd Vice President.

"B. G. Mitchell, Secretary."

On the margin of this receipt there are the words:

"Countersigned and registered this 3rd day of June, 1891.

"Union Trust Company of New York,

"By J. V. B. Thayer, A. Secretary."

This certificate makes no allusion to the prospectus. It certifies that there have been deposited with the trust company, in trust, fifty shares, as above stated; that is, fifty ordinary shares of the H. H. Warner & Co., Limited. It also states that said shares, together with the deed of transfer thereof, will be delivered to the plaintiff, or assigns, on surrender of this trust receipt, properly indorsed; and on the back of the certificate is the form of transfer to be executed by the plaintiff in case he should part with his shares. By this form, in case of such assignment he bargained and transferred "all the property, right, title, and interest represented by the within certificate."

So far as any liability ex contractu can be claimed to have been incurred by the trust company to the plaintiff, it must have been incurred by these transactions, viz. the payment by the plaintiff to the trust company, the original receipt preliminary to the furnishing of the trust certificates proper, the reference in such receipt to the prospectus, the delivery of the trust receipts in June, 1891, and such representations as may be fairly imputed to the trust company from these acts. There is no statement in the papers issued by the trust company in respect to the value or character of the stock in the English company, except that the shares were of the par value of ten pounds sterling per share. The prospectus implies that they were "full paid and nonassessable." That they had the value which the statements of the prospectus as to the earnings and prospects of the English company would indicate, the Central Trust Company clearly did not undertake to state; but it is argued upon the part of the plaintiff that the trust company did undertake to furnish, upon the demand of the subscriber to the stock, fifty ordinary shares in the H. H. Warner & Co., Limited, upon the surrender of the trustee's receipt, and that this undertaking involved an implied warranty that the shares so to be tendered should be, not only genuine shares, the title of which should pass by the deed of transfer, but that such shares should also be unincumbered and free from any lien upon them. Can such an obligation be spelled out from these papers? Assuming for the present that the Central Trust Company are liable as vendors in their own interest, the general rule in the sale of personal property is caveat emptor,—the purchaser buys at his peril. There is ordinarily no warranty by the seller, unless he gives one. If, indeed, he sells property as his own, he warrants that he has a title and the right to sell, but this warranty does not exist where the possession is in another. Scranton v. Clark, 39 N. Y. 220. So, if the seller is the manufacturer, he impliedly warrants against secret defects. And in the sale of choses in action there is an implied warranty of genuineness, but none that the thing sold is free from liens or defenses. See Flandrow v. Hammond, 148 N. Y. 129, 42 N. E. 511; Littauer v. Goldman, 72 N. Y. 506; Carleton v. Lombard, 149 N. Y. 137, 43 N. E. 422. Of course, if the seller makes representations as to his title, or as to the kind and quality of the goods sold, he must make such representations good, or he may be liable for fraud in misleading a purchaser, or concealing from him information which he has a right to require. Now,

in this case there were no representations made by the trust company, except those which are contained in the receipt, the trust certificates, and the prospectus. The plaintiff's counsel insists that the words "transfer agents," as contained in the prospectus, imply that the shares against which the certificates were issued were shares standing in the name of the trust company upon the books of the English company: The trust company did not undertake to act as transfer agents of the English company. What they did undertake appears from the language of the certificates. The statement is that there have been deposited with the trust company fifty shares of the English company. Then the certificate goes to state, "Said shares, together with a deed of transfer thereof, will be delivered to William McClure, or assigns, on surrender of this trust receipt properly indorsed. This receipt is transferable at the office of said trust company in New York." This trust company therefore was to be the transfer agent of the certificates issued by it, and not transfer agents of the English company. I have again considered the decision I made upon the application of plaintiff's counsel to give testimony that the words "transfer agents" had a peculiar and technical meaning; but I am satisfied that, as the prospectus was issued to the public generally, and not merely to persons familiar with the usages of the stock exchange, the words must have their ordinary and popular meaning, and, construing the words in connection with what it was that the trust company undertook, in terms, to transfer, or to be the transfer agent of, I think it is clear that no other meaning of a technical character can be imported into the terms of the prospectus.

I have so far assumed that the trust company is liable as though it had, as owner, sold shares belonging to it. But it certainly did not assume to be the owner, and to be selling on its own behalf. It was clearly acting as agent for others. The prospectus did not disclose who it was that was owner of the shares offered to the public. It states that S. V. White & Co., bankers, "are authorized to offer for subscription." These bankers, then, were the promoters or agents, but they did not say for whom. If the trust company had, indeed, undertaken to sell, themselves, as owners or vendors, they might be liable as such, though they in fact acted only as agents. But the papers all show however, that the position of the trust company was that of agents only, of some kind. The plaintiff could hardly have supposed that they were dealing in the English shares as owners of them in their own right. There is no evidence that he thought so. Then the rule would seem to be that the plaintiff, as purchaser, could not impose a liability on the trust company by simply assuming what he had no evidence of. He must certainly be held to have bought at his peril if he failed to make inquiry as to the kind of shares he subscribed for. They were shares in a foreign company, but he does not appear to have called for its articles of association, nor did he make further inquiry. He knew that the trust company was acting as agents, trustees, or depositaries, and he has given no proof that he exacted any guaranty or undertaking on their part beyond what is contained in the receipts or certificates issued by them. The contract, then, in this case, so far as the obligations of the trust company were created by it, was closed by the delivery of the certificates to the plaintiff. It was not responsible for any of the acts of the English company after that time, nor can such acts furnish retroactive evidence of fraud against the trust company. There are cases where the later conduct of a party may throw light on his previous intent, as where one charged with having purchased goods with intent to defraud subsequently makes an assignment which proves his previous insolvency. But in such cases it is the party's own acts which show his intent. This rule is not broad enough to make the trust company liable for the acts of the English company after the plaintiff took his certificates, nor for the second prospectus which was issued in November.

It is nevertheless argued that, as the shares against which the certificates to plaintiff were issued were shares standing in the name of H. H. Warner, they were not such shares as were contemplated by the arrangement, but that shares of the H. H. Warner Company itself were in the minds of the parties. The prospectus does not make this very clear. Nor is it clear that the shares of the English company were to be shares then unissued, but to be issued by that company after the subscriptions had been made. The contrary is ap-

parent, I think, from the language of the trust certificates. The trust company certifies to the deposit of fifty shares in trust; said shares, "together with a deed of transfer thereof," to be delivered, etc. The shares, then, must have been issued by the English company to some one whose deed of transfer would enable the subscriber or purchaser to become registered as a member of the English company. That the Central Trust Company was in the first instance, or after receiving the subscriptions, to apply for shares in the English company, does not seem to me to have been the arrangement.

As to the allegation of fraud, I do not see how the evidence in the case can be held sufficient to sustain it. In fact, the plaintiff's counsel concedes, as I understand him, that there was no intention upon the part of any of the officers or agents of the trust company to misrepresent anything connected with the scheme for putting the English stock upon this market; nor can I see that any of them kept back any information which they had on the subject, or that they had, in fact, any information beyond such as any person proposing to invest could obtain. The general rule is that any one who proposes to take shares in an incorporated company is chargeable with knowledge of the organization of the company, and of its powers in creating and issuing shares of its capital stock, and of the control it may have over such shares. If any special inquiries had been made by the plaintiff, and he had been misled by the trust company, he would have had stronger reasons for complaining. He did make some inquiries of S. V. White & Co., but he does not show that he was induced by the trust company, in any way, except by the prospectus, to make the subscription which he did make for the shares that he received. When the plaintiff demanded shares of the English company, in accordance with the terms of his certificate, he was tendered shares with a deed of transfer, which, upon their face, answered the requirements of the contract. The certificate expressed that they were fully paid up shares, and the English company would have been estopped from denying that statement. The deed of transfer from the registered holder of the shares was sufficient to entitle the plaintiff to become the registered holder himself. The objection to the shares was that the English company claimed a lien or charge upon them. Possibly, it could not have supported that claim, because it had recognized the Central Trust Company as the holder of the shares, to the extent of remitting dividends earned upon them. But I assume that the shares were subject to this lien.

It has been alleged (although this is not especially the ground of plaintiff's action) that it was the duty of the Central Trust Company to become the registered holder of the shares against which it issued its certificate. There is no evidence which establishes such a duty upon its part, nor can I see that it undertook to do anything of that kind. The plaintiff, if he had accepted the shares tendered to him, would have considered the propriety of becoming the registered holder of them; but there is no duty imposed upon the transferee of shares to become registered, if he is willing to be content with the imperfect title which the unregistered shares give to him, and there may be responsibilities connected with becoming the registered shareholder which the owner of the shares may prefer to avoid.

I have not considered the question whether I ought to put the plaintiff to an election as to the ground upon which he seeks to recover; preferring to dispose of the motion to dismiss by considering whether, under any aspect of the proof, he has established a cause of action. I have come to the conclusion that the trust company is not liable, upon the evidence in the case, upon any cause of action that the complaint can be construed to assert.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Harry Van Ness Philip, for appellant.
Adrian H. Joline, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee.