## J. W. ALTMAN v. AMERICAN FOODS, INC.

(Filed 4 November, 1964.)

1. **Corporations § 15—**

   The issuance of stock by a corporation to certain of its "key employees" does not make the issue a private offering, and such issue is not necessarily exempt from the provisions of the Securities Act of 1933.

2. **Same; Sales § 13—Where chose tendered is materially different from that agreed upon, purchaser may refuse tender and recover consideration.**

   Plaintiff's evidence was to the effect that as an employee of defendant corporation he was given an option to buy certain stock of the corporation at a stipulated price for the purpose of investment, that he exercised the option and made the stipulated payment, but that the corporation refused to issue the stock unless plaintiff signed a letter stating that he was acquiring the stock for investment and not with view to public sale, and unless the stock certificate was imprinted with a stipulation that the shares represented by the certificate had not been registered under the Securities Act of 1933 and could not be transferred except in compliance with that Act. There was no evidence that plaintiff was an officer of the corporation cognizant of its fiscal affairs or had access to information which would charge him with notice of the plans under which the stock was to be issued. *Held:* While the representation with regard to the letter was immaterial in view of the limitation of the offering of stock for investment purposes, the provisions imprinted upon the certificate amounted to a material variation rendering the stock tendered substantially different from the stock defendant agreed to sell, and therefore plaintiff is entitled to refuse delivery of the stock and to recover the consideration paid.

APPEAL by plaintiff from *McLean, J.,* March 1964 Session of HENDERSON.

Plaintiff instituted this action in the General County Court of Henderson County to recover money he paid defendant for stock under its employees' restricted stock-option plan. He alleges that defendant retains his money but refuses to issue the stock except upon conditions not contained in the option. Defendant admits the receipt of plaintiff's money and alleges that it is ready to issue the stock to him "in accordance with applicable provisions of law."

Upon the trial the parties waived a jury, and only plaintiff offered evidence. At the conclusion of all the evidence, defendant's motion for judgment of nonsuit was denied and defendant excepted. The judge found the following facts, which are fully supported by the evidence:

Plaintiff is a citizen of Florida and a summer resident of North Carolina. Defendant is a Florida corporation owning real property in this State, which plaintiff has attached. In December 1961 plaintiff was in defendant's employ. During that month, at a meeting in defendant's

office in Florida, defendant's attorney informed plaintiff and other employees of a plan under which they might acquire stock in the corporation *for investment*. Plaintiff, in answer to a specific question, was told that he could sell the stock later if he decided, in good faith, not to keep it. Plaintiff received a "restricted stock purchase warrant" entitling him to purchase 5,500 shares of defendant's common stock at $1.8644 per share on or before November 6, 1971. The warrant could not be partially converted. It recited that it was subject to all the provisions of American Foods, Inc. Employees' Stock Option Plan approved October 2, 1961, on file in the office of the corporation, together with any amendments to same. The Plan itself was not read to the employees, nor were copies furnished them until July 1962. On February 20, 1962, plaintiff executed the following purchase form and delivered it, with his check, to defendant:

> "The undersigned hereby irrevocably elects to exercise the within warrant and to purchase the shares of stock of said Corporation called for thereby and hereby makes payment of $10,254.20 in payment of the purchase price thereof. In exercising this warrant it is my intention to retain such stock as an investment and not for distribution."

Beneath his signature plaintiff inserted the request, "Please issue in denominations of 100 shares."

Thereafter defendant refused to issue the stock until plaintiff signed and delivered to defendant "an investment letter" which contained, among other things, the following statement:

> "By my signature undersigned, I hereby advise American Foods, Inc. that the said shares will be acquired for investment when they are issued, and not with a view to the public sale or distribution thereof."

Defendant refused to deliver the stock unless, also, the following legend was imprinted upon the certificate:

> "The shares represented by this certificate have not been registered under the Securities Act of 1933. The shares have been acquired for investment and may not be transferred, except in compliance with the Securities Act of 1933."

Plaintiff refused to accept certificates containing this legend and to sign the investment letter. When defendant declined to refund his money, plaintiff instituted this action.

The Plan, introduced in evidence as plaintiff's Exhibit A, authorizes the issuance of 50,000 common shares of defendant to "a limited number of key employees" approved by the Board of Directors and eligible under Section 421 of the Internal Revenue Code of 1954. It makes no mention of the Securities Act of 1933, but provides that:

> "The exercise of any option shall be contingent upon receipt from the optionee of a representation that, at the time of such exercise, it is his then present intention to acquire the shares being purchased for investment and not for resale and upon receipt by the Company of cash payment of the full purchase price of such shares."

Upon the findings made, the General County Court held, in effect, that defendant had added additional terms and conditions to its offer to plaintiff after the latter had accepted the original offer; that plaintiff, rejecting the new conditions, was entitled to the return of his money. From a judgment that plaintiff recover $10,254.20 with interest from March 26, 1962, defendant appealed to the Superior Court of Henderson County, assigning, *inter alia,* that the court had erred in overruling defendant's motion for judgment as of nonsuit. When Judge McLean heard the appeal, he overruled all defendant's assignments of error except the one relating to the failure of the court to sustain his motion for nonsuit. He ruled that judgment as of nonsuit should have been entered at the close of all the evidence and remanded the case to the General County Court for a judgment dismissing the action. Plaintiff appealed to this Court.

*Whitmire & Whitmire for plaintiff.*
*Redden, Redden & Redden for defendant.*

SHARP, J.　The record does not disclose whether the stock issue involved in this case has been registered under Florida's uniform sale of securities law, FLA. STAT., ch. 517. It is quite clear, however, that it has not been registered under the Securities Act of 1933, 15 U.S.C.A., §§ 77a-77b. With this Act, Congress broadly prohibited the use of the mails and facilities of interstate commerce to sell a security not registered thereunder, unless the security itself is of a class specifically exempt, § 77c, or is involved in an exempt transaction as defined by the Act, § 77d. Any person claiming the benefit of an exemption from registration has the burden of proving that he is entitled to it. *SEC v. Ralston Purina Co.,* 346 U.S. 119, 97 L. Ed. 1494, 73 S. Ct. 981; *Gilligan, Will & Co. v. Securities and Exchange Com'n,* 267 F. 2d 461 (2d Cir.).

It may be that the stock in question was exempt from registration under the Act as a "security which is a part of an issue offered and sold only to persons resident within a single state or territory where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within such state or territory," § 77c. Also, it may be that defendant's offer to plaintiff of 5,500 shares under its stock-option plan to sell 50,000 shares of common stock to "key employees" was an exempt transaction as "not involving any public offering," § 77d(1). The limitation of an offering by the issuer to certain of its employees designated as "key employees" does not necessarily make it a private offering and thus an exempted transaction. As the court pointed out in *SEC v. Ralston Purina Co.*, *supra*, absent a showing that those employee-offerees have access to the kind of information which registration would disclose, § 77aa, and are thus able to fend for themselves in dealings with their corporate employer, they are in as much need, as the rest of the "investing public," of the protection of the Act. In any event, neither the allegations of the complaint and the evidence, nor the findings of fact by the trial court are sufficient to determine whether this stock is exempt from registration under the Act.

Whether a transaction involves a public offering of stock is a question of fact involving many aspects.

> "An important factor to be considered is whether the securities offered have come to rest in the hands of the initially informed group or whether the purchasers are merely conduits for a wider distribution. . . . If the purchasers do in fact acquire the securities with a view to public distribution, the seller assumes the risk of possible violation of the registration requirements of the Act and consequent civil liabilities. This has led to the practice whereby the issuer secures from the initial purchasers representations that they have acquired the securities for investment. Sometimes a legend to this effect is placed on the stock certificates and stop-transfer instructions issued to the transfer agent," SEC Securities Act Release No. 33-4552, November 6, 1962.

An issuer, however, may not establish a private offering and claim an exemption under § 77d(1) of the Act merely by the device of collecting so-called "investment letters" if it knows, or should know, that the purchasers are 'in fact acquiring the stock with a view to its distribution, § 77b(11); SEC Securities Act Release No. 3825, August 12, 1957. Persons who act in this capacity are "underwriters" and subject to the registration provisions of the Act, § 77d.

Against this legal background we now consider whether plaintiff is required to accept the stock certificates which defendant has tendered him; if not, then he is entitled to the return of his money.

Plaintiff has neither alleged nor offered any evidence tending to show that defendant made any use of the mails or of any other interstate facility to promote, sell, or distribute the stock issue under consideration. He does not proceed under the civil-liabilities provisions of either the Securities Act of 1933, § 77l or FLA. STAT. § 517.23. Instead, he bases his suit on common-law principles of contract liability. We come, therefore, to this inquiry: Did defendant tender plaintiff the stock certificate which it contracted to sell him and which he had a right to expect in view of the information disclosed?

According to the evidence and the specific finding of the trial judge, defendant's attorney told plaintiff that the stock his option permitted him to purchase "as an investment" could be resold, "provided he later in good faith changed his mind" about keeping it. The evidence is that when the attorney explained the stock option plan to defendant's employees to whom the stock was being offered, he failed to disclose that the stock issue was not to be registered with the SEC; nor did he mention that the stock certificate would carry a legend which would restrict its marketability in the event plaintiff should desire to sell it. Likewise, neither the option plan nor the stock warrant contained this information. It is on the materiality of these omissions that the case must turn.

We think defendant omitted to disclose facts which, had they been known, would undoubtedly have deterred an average prudent investor who was not one of defendant's executive personnel from purchasing the stock as an ordinary investment. There is no evidence in the record suggesting that plaintiff was an officer of the corporation cognizant of its fiscal affairs or that he had access to information which would charge him with notice that the legend was calculated to protect defendant from penalties imposed by the Securities Act of 1933. Indeed, all the implications in the evidence are to the contrary. Plaintiff was not to be expected to have the information which defendant disclosed only when it tendered him the stock. He was among those employees needing protection as a member of the general public. That the stock certificate would be imprinted with the legend was a material fact which defendant had a duty to disclose to plaintiff, especially so in view of his specific questions as to his ability to sell the stock. Its failure to discharge this duty made the stock it tendered plaintiff substantially different from the stock it had agreed to sell him.

Although defendant's attorney failed to mention an investment letter when he explained the stock option plan to the employees, the statement, that plaintiff intended to hold the stock for investment and not for distribution, which he signed when he exercised his option makes this particular omission immaterial. Notwithstanding this statement by plaintiff, it is implicit in the evidence that he did not clearly understand the meaning of the investment representation contained in the option plan and the purchase form by which he exercised his option to buy the stock in question. The investment representation was, of course, to be used by defendant as evidence that the stock issue was a private offering and that the employee-offerees were not underwriters of the unregistered stock. Anyone who pays $10,254.20 for stock obviously makes an investment in the ordinary meaning of that term, and from time to time, in the prudent management of his portfolio, he will be expected to consider the advisability of selling that stock. When defendant's attorney explained to plaintiff and its other "key employees" the opportunity it was providing them to buy stock *for investment,* plaintiff inquired specifically whether he could sell some of the stock to get back the money he would borrow to buy it. The attorney told him that he could sell part of it and that he did not have to sell it all at one time. It is a fair assumption that it was in consequence of this representation that he requested his 5,500 shares be issued in denominations of one hundred, so as to facilitate their sale in part. (Of course, to obtain the tax advantage envisioned by the option plan and allowed by INT. REV. CODE OF 1954, § 421, for employee-restricted stock option plans, no employee could sell his stock within two years from the date of the option nor within six months after the transfer of the shares to him.)

A case somewhat analogous to this one is *McClure v. Central Trust Co.,* 165 N.Y. 108, 58 N.E. 777, 53 L.R.A. 153, reversing 28 App. Div. 433, 53 N.Y.S. 188. There, plaintiff sued to recover $7,500.00 he paid defendant Trust Company, a depository and transfer agent, for one hundred shares in an English company. *W,* the largest stockholder in the company, had devised a method of selling his stock in the United States through defendant, which issued certificates representing the number of shares sold. In due time these certificates would be exchanged for stock which had been transferred on the books of the company in London. White & Co., as brokers for *W,* the undisclosed owner, offered the stock for sale. Defendant took applications for the purchase of the stock and distributed *W's* prospectus from its counters. When plaintiff subscribed for his shares, he received from defendant a temporary receipt by which it agreed that, upon full payment and surrender

of the receipt, plaintiff would receive its certificate representing the number of shares for which he had subscribed and paid. When plaintiff completed his payments, he received certificates stating that one hundred shares, together with a deed of transfer, would be delivered to him. Thereafter, when plaintiff demanded his shares of stock, he discovered that *W* was largely indebted to the English company, that its by-laws gave it a paramount lien upon a stockholder's shares for any indebtedness to the company, and that the company refused to transfer any stock registered in *W's* name until its lien was discharged. Plaintiff sued defendant to rescind the sale and recover his money. The trial court entered a judgment of nonsuit, which the Court of Appeals reversed on the theory that defendant had breached its implied warranty that the stock it sold was marketable. The court said:

> "We thus reach the question whether the defendant tendered to the plaintiff what it agreed to sell him. Disregarding the mere form of the transaction, the thing sold was stock, and did the stock tendered answer the description of the stock sold? . . .

> "(W)hen the thing sold differs in substance from what the purchaser was led by the vendor to believe he was buying, and the difference in subject-matter is so substantial and essential in character as to amount to a failure of consideration, there is no contract, and the purchaser may recover back the money paid. . . .

> "We think it was a condition of the sale, whether called an 'implied warranty' or any other name, that the defendant was to deliver marketable stock free from lien; for that alone would meet the description of the thing sold, under the circumstances surrounding the parties when the sale was made. . . .

> "It knew, but the plaintiff did not know, that the shares in its possession were issued by the English company subject, in express terms, to its articles of association and regulations; that the deed of transfer was likewise 'subject to the several conditions on which' the transferrer held the shares 'immediately before the execution' thereof; and that it also contained a covenant on the part of the transferrer 'to accept and take the said shares subject to the conditions aforesaid.' " *Id.* at 121, 58 N.E. at 780, 53 L.R.A. at 160.

To sustain its position that plaintiff in this case is required to accept the stock it has tendered him and therefore is not entitled to recover his money, defendant relies upon *General Development Corp. v. Catlin*, 139 So. 2d 901 (Fla. 3d Dist.). That case differs from this one in that by the terms of Catlin's stock option he specifically agreed not to sell

or distribute any of the stock he obtained under it "otherwise than in compliance with the Securities Act of 1933, as amended, and the applicable rules and regulations thereto. . . ." Since the Florida law provides that there shall be no restriction upon the transfer of shares of stock represented by a certificate unless the restriction is stated upon the certificate, FLA. STAT. § 614.17, *and since Catlin had agreed to the restriction,* the court held that he was required to accept a restricted stock certificate. That case is a far cry, however, from holding that a prospective purchaser is required to accept a stock certificate containing a condition of which he was not informed when he contracted to purchase the stock and to which he has not agreed.

If plaintiff should be required to accept the stock certificate with the proposed legend, we cannot say, any more than can he, whether he could hereafter transfer it or what it would cost him in time, money, and effort if he could. First, if the proposed legend should mean that the stock must be registered with the SEC before it can be sold, a very expensive and time-consuming proceeding would be required, which might make the sale of plaintiff's stock entirely impractical. See generally, *Sale of Shares by Controlling Persons and Rule 154,* 18 U. MIAMI L. REV. 88. Second, if it means that an application must be made to the SEC for a waiver, or "no action letter," the sale of the stock would depend upon what action the Commission, in its discretion, then decided to take. In either case, the legend imposes a greater burden upon plaintiff than was contemplated by the option and amounts to a material condition to which plaintiff did not agree. We note that plaintiff is no longer an employee of defendant and doubtless could look for little cooperation from defendant in the sale of this stock. Further, we may assume that he could not sell the stock without the permission of defendant's transfer agent. "In accordance with the rules pertaining to the performance of contracts generally, the parties to a contract of sale of corporate stock are bound to perform it according to its terms," absent some legal prohibition or excuse. 18 C.J.S., *Corporations,* § 409 (1939).

Plaintiff's evidence was amply sufficient to withstand the defendant's motion for nonsuit and to support the judgment of the Henderson General County Court. The judge of the Superior Court erred in reversing its judgment and dismissing the action as of nonsuit.

The judgment of the Superior Court is

Reversed.